UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

Tammy M.[1],                              )
                                          )
      Plaintiff,                    )
                                          )
v.                                        )     CIVIL NO. 2:20cv285
                                          )
ANDREW M. SAUL,                           )
Commissioner of Social Security,          )
                                          )
      Defendant.                    )

<u>OPINION AND ORDER</u>

     This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

     The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2.      The claimant has not engaged in substantial gainful activity since November 9, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.      The claimant has the following severe impairments: rheumatoid arthritis, fibromyalgia, spine disorder, ankylosing spondylitis of the feet, peripheral neuropathy, asthma, and obesity (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can frequently handle and finger, and occasionally operate foot controls. She can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, and crouch. She can never climb ladders, ropes, or scaffolds, never crawl, and never work at unprotected heights, never around dangerous machinery with moving mechanical parts, and never operate a motor vehicle as part of her work-related duties. She can occasionally work in humidity and wetness, and occasionally in dust, odors, fumes, and pulmonary irritants. She must use a medically necessary cane at all times while walking.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on August 1, 1971 and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

> 11.   The claimant has not been under a disability, as defined in the Social Security Act, from November 9, 2017, through the date of this decision (20 CFR 404.1520(g)).

(AR. 28-37 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on April 14, 2021. On May 26, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on June10, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature

of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

At the hearing before the ALJ, Plaintiff testified that she was no longer able to work given a myriad of difficulties including rheumatoid arthritis, fibromyalgia, ankylosing spondylitis, and migraines. (AR 60.) She was limited to sitting for about ten to fifteen minutes continuously, standing for about ten minutes at a time, and walking about half a block with her cane. (AR 62.) She also had problems gripping, grasping, and performing fine manipulation. (AR 61, 63, 70-71, 67.) Since beginning Botox injections for her migraines, the frequency of her headaches had improved to about one a week, but her headaches remained intense, sometimes lasting the entire day or longer. (AR 68-69.) When she had a migraine, she needed a dark and quiet environment. (AR 69.) She also admitted that she struggled with fatigue and depression, including difficulty focusing or concentrating. (AR 65, 67-68.) Her pain levels fluctuated, and, on good days, she could do some household tasks with rest breaks. (AR 64-65.) Her bad days, however, outnumbered her good days. (AR 64-65.)

In reports to the Agency, Plaintiff set forth her limited activities which included preparing simple foods like microwave meals and doing light housecleaning for short time increments. (AR 224.) She struggled with fatigue, depression, and anxiety. (AR 232, 242, 257-58.) She needed reminders, became easily irritated, did not finish tasks she started, had difficulty following instructions, and became anxious with stress or changes in routine. (AR 224, 226-28.) She had problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, remembering, completing tasks, concentrating, understanding, following instructions, using her hands, and getting along with others including being fired because of conflicts with her boss and coworkers. (AR 227-29, 232, 258.) Her migraine headaches required her to retreat to a

dark and quiet room. (AR 193.)

Plaintiff's husband also completed a report, noting that Plaintiff was able to perform some household tasks on good days such as light dusting or preparing food; both he and their son helped her. (AR 216.) She needed reminders, had become more forgetful, was easily agitated, at times had extreme difficulty with paying attention, and did not finish tasks she started. (AR 218-19.) She additionally had difficulty following instructions, had been fired for difficulty getting along with the manager and coworkers, and did not handle stress or changes in routine well. (AR 219-20.) Plaintiff had problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, understanding, following instructions, using her hands, and getting along with others. (AR 219.)

Plaintiff's primary care provider, S. Chughtai, D.O., treated Plaintiff's conditions and helped to coordinate her treatment with specialists. (AR 341-44.)

Plaintiff received treatment from many specialists, including rheumatologist, M. Aloman, M.D., who noted in October 2017, immediately prior to Plaintiff's alleged onset date of disability, that Plaintiff was experiencing severe and constant pain all over which increased with activity. (AR 818.) She also had 18 identifiable trigger points, an antalgic gait, decreased spinal motion, lumbar spasm, and knee tenderness with crepitus. (AR 823.) Dr. Aloman also reported Plaintiff's complaint of numbness in her fingers which caused difficulty dressing. (AR 818.) Dr. Aloman diagnosed both rheumatoid arthritis involving multiple sites with a positive rheumatoid factor and fibromyalgia with recommendation to increase Plaintiff's Gabapentin. (AR 824.) Dr. Aloman's office notes in 2018 continued to document Plaintiff's trigger points, severe neck muscle spasm, continued limitation in spinal motion, knee tenderness with crepitation, and fatigue. (AR 798-805,

6

753-62.)

In July 2018, Plaintiff began treatment with rheumatologist, V. Reddy, M.D., who noted Plaintiff's increasing pain, as well as fatigue, anxiety, and depression. (AR 1180-89.) On exam, Plaintiff was tearful with both joint and soft tissue swelling. (AR 1181, 1184.) At follow-up in August, Dr. Reddy noted Plaintiff's intolerance to some medication and increasing joint pain especially in her hands and feet. (AR 1190.) Plaintiff had limited neck motion, swelling of the wrist and finger joints, decreased grip strength, and knee tenderness. (AR 1194.) In January 2019, Dr. Reddy noted that Plaintiff's difficulties were compounded by her mood swings, depression, and anxiety. (AR 1630.) Plaintiff continued to battle pain throughout her body, fatigue, morning stiffness, and finger swelling. (AR 1621.)

In January 2019, Dr. Reddy completed arthritis and fibromyalgia medical source statements, noting that Plaintiff's signs and symptoms included swelling in her hands, wrist, and left foot; abnormal lab work; a history of widespread pain; at least 11 of 18 specific tender points; cognitive dysfunction; irritable bowel syndrome; muscle pain and weakness; frequent severe headaches; dizziness; shortness of breath; frequent urination; insomnia; dry eyes; fatigue; depression; anxiety disorder; waking unrefreshed; numbness or tingling; abdominal pain/cramps; constipation; nausea; nervousness; itching; sun sensitivity; and panic attacks. (AR 1530, 1534-35.) She had pain throughout her body with precipitating factors including changing weather, fatigue, stress, movement/overuse, cold, sleep problems, and static position. (AR 1535.) Emotional factors contributed to the severity of her symptoms and functional limitations. (AR 1535.) Dr. Reddy opined that Plaintiff did not have the stamina to perform full time work; needed to shift positions at will and have periods of walking around during the day; required unscheduled breaks; should

elevate her legs when sitting; could infrequently perform fine manipulation and simple grasping; would likely be off task twenty percent or more of the day; was incapable of low stress work; would have good and bad days; and would be absent more than four days monthly if working. (AR 1536-37, 1532.)

Plaintiff also received treatment from neurologist, S. Kassar, M.D., from 2017 to 2019 including for her migraine headaches, neck pain, numbness and tingling in her hands and wrists, tingling and burning sensation in her feet, dizziness, fatigue, memory issues, and difficulty thinking. (AR 1045-52, 1057-62, 1078-92, 1097-1106, 1109-13, 1117-21, 1577-87.) Plaintiff reported to Dr. Kassar that she experienced more than twenty headaches monthly, which caused her to lie down with sensitivity to light and noise. (AR 1072, 1078, 1085, 1090, 1098.) Plaintiff had an unsteady gait, decreased reflexes, and decreased sensation in her hands and feet. (AR 1046, 1050, 1058, 1074, 1080, 1099.) Dr. Kassar administered repeated spinal nerve blocks. (AR 1061-62, 1076-77, 1081.) In addition, Dr. Kassar administered left elbow injections for her ulnar neuropathy, this also lessened her hand numbness, and Dr. Kassar subsequently injected both elbows. (AR 1102, 1095, 1097, 1109, 1113, 1118.) Dr. Kassar also began treatment with Botox injections both for her migraine headaches and cervical dystonia. (AR 1081, 1083, 1086, 1088-89, 1100, 1107, 1113, 1115, 1579, 1585.) With Botox treatment, her migraine headache frequency decreased to seven to ten headaches monthly instead of nearly daily. (AR 1577.) She remained sensitive to light and noise and needed to lie down when having a migraine headache. (AR 1577.)

In February 2019, Dr. Kassar completed a medical assessment of Plaintiff's work abilities, opining that her pain would not allow her to perform full time work; would require unscheduled breaks; and imposed marked restrictions on her concentration and/or persistence. (AR 1542-43.)

Dr. Kassar further reported that Plaintiff has about two migraine headaches a week that lasted on average eight hours. (AR 1545.) Her headaches were triggered by stress, bright lights, lack of sleep, vigorous exercise, and weather changes. (AR 1546.) Bright lights, noise, and moving around aggravated her migraine headaches. (AR 1546.) She treated her headaches by taking medication and lying down in a quiet and dark place. (AR 1546.) Dr. Kassar further opined that Plaintiff would likely be absent from work more than four days monthly and would require unscheduled breaks if working. (AR 1547.)

Specialist, L. Buccellato, M.D., treated Plaintiff's pulmonary difficulties, including her severe persistent asthma with acute exacerbations. (AR 662-86, 762-71.) Plaintiff repeatedly had diminished breath sounds and required medication adjustments. (AR 667, 675, 685, 769, 767.)

Plaintiff also saw podiatrist, Dennis Smith, DPM for her left foot difficulties. (AR 1491-1523.) He tried injecting her foot to lessen the pain, but she only received relief for three days. (AR 1513.)

Plaintiff also struggled with mental health, receiving treatment at the Regional Mental Health Center with psychiatrist, L. Ang, M.D., who, in December 2017, noted that Plaintiff had problems with racing thoughts, crying spells, low energy, anxiety, and not caring whether she lived or died. (AR 1446.) She also had an anxious and depressed mood with a somewhat constricted affect. (AR 1447.) Dr. Ang diagnosed major depression and a panic disorder; she prescribed Lexapro for depression, Alprazolam for anxiety, and Trazodone for better sleep. (AR 1447.) In May 2018, Dr. Ang noted continued depression and anxiety with memory issues. (AR 1448-49.) She continued to have an anxious and depressed mood with a somewhat constricted affect. (AR 1449.) In August, Dr. Ang added Duloxetine as an additional medication for her depression and

9

pain. (AR 1451.) She continued to have a depressed and anxious mood with constricted affect. (Id.) In January 2019, Dr. Ang noted continued depressed and anxious mood with constricted affect. (AR 1615.) Dr. Ang increased the dose of Plaintiff's Duloxetine and discontinued her Lexapro. (AR 1615.) In March, Dr. Ang noted Plaintiff's concentration as only "fair" rather than good. (AR 1617.) She had a sad and constricted affect with an anxious and depressed mood. (AR 1617.)

In March 2019, Dr. Ang completed a functional capacity assessment form, noting that Plaintiff had major depression and a panic disorder with clinical findings of panic attacks, shortness of breath, anxiety, social isolation, sadness, loss of interest, "brain fog," sleep problems, and appetite changes. (AR 1549.) Dr. Ang reported that Plaintiff had decreased energy, past thoughts of suicide, an abnormal affect, feelings of guilt/worthlessness, mood disturbance, difficulty thinking or concentrating, persistent disturbance of mood or affect, emotional withdrawal/isolation, easy distractibility, anxiety, short term memory impairment, and sleep disturbance. (AR 1550.) Dr. Ang opined that Plaintiff had marked limitations in maintaining social functioning and maintaining concentration, persistence, or pace. (AR 1551.)

Plaintiff also participated in counseling sessions with a therapist, with those notes showing hopelessness, sadness, depression, anxiety, panic attacks, problems interacting with others, memory difficulties, and "fuzzy" thinking. (AR 1345-63, 1598-1610.)

In addition to her treating physicians, in June 2018, B. Horton, Psy.D., reviewed the record for the Agency and opined that Plaintiff's mental condition imposed mild limitations; this was affirmed by William Shipley, Ph.D. (AR 89, 105-06.) S. Small, M.D., also reviewed the record for the Agency and opined that Plaintiff could perform light work with occasional climbing,

stooping, kneeling, balancing, crouching, and crawling. (AR 90-92.) In November 2018, M. Ruiz,

M.D., also reviewed the record for the Agency and opined that Plaintiff could perform light work

with occasional postural activities, frequent fine and gross manipulation, four hours total standing

and walking, and avoiding concentrated exposure to hazards, wetness, and pulmonary irritants.

(AR 107-10.) Dr. Ruiz limited Plaintiff to frequent handling and fingering due to her rheumatoid

arthritis (AR 108), noting the July 2018 rheumatoid treatment note documented some swelling of

the hands and wrists as well as decreased grip strength. (AR 109.) In November 2018, B. Pithadia,

M.D., examined Plaintiff for the Agency, noting that Plaintiff used a cane, all her movements were

slow, and she could not remain seated for long. (AR 1526.) She was unable to walk on her heels

or toes, only could squat fifty percent, and had diminished grip at four of five bilaterally. (AR

1527.) With dynamometer testing using the right hand, Plaintiff was able to generate 17 kilograms

of force (average 29 kilograms), and using the left hand, she was able to generate 11 kilograms of

force (average 28 kilograms). (AR 1527.) Her "medium" term memory was "fine" but she had

some limitation with short-term memory which was assessed as only "fair." (AR 1528.)

Through a series of hypothetical questions, the ALJ asked the vocational expert to assume

someone who could perform sedentary work with frequently handling and fingering; occasionally

operating foot controls; occasionally climbing ramps and stairs; occasionally balancing, stooping,

kneeling, and crouching; never climbing ladders, ropes, or scaffolds; never crawling; never

working at unprotected heights or around dangerous machinery with moving mechanical parts or

operating a motor vehicle as part of work-related duties; occasionally working in humidity and

wetness and occasionally in dust, odors, fumes, and pulmonary irritants; and requiring a cane at all

times while walking. (AR 74-76.) The vocational expert testified that such an individual could not

perform Plaintiff's past work but could perform work as a document preparer (105,000 national

jobs), packer (100,200 national jobs), and type copy examiner (75,000 national jobs). (AR 74-76.)

The person could change positions if she remained on task. (AR 77-78.) The person could not be

off task more than ten to fifteen percent of the time or absent more than two days per month. (AR

78.) If the person had to get up to walk around, that would count as off task time. (AR 80.)

During the first ninety days of work, there would be "almost zero tolerance for any deviation from

focus, attention, or absenteeism." (AR 80.)

In support of remand, Plaintiff first argues that the ALJ erred in assessing the opinion

evidence from the treating specialists for Plaintiff's physical conditions. Plaintiff's treating

rheumatologist, Dr. Reddy, and treating neurologist, Dr. Kassar, opined to limitations inconsistent

with ongoing full-time work as set forth above. (AR 1530-37, 1542-47.) As Plaintiff's claim was

filed after March 27, 2017, the new regulations apply which eliminate the "controlling weight"

instruction for treating physician opinions.[2] The two "most important factors for determining the

persuasiveness of medical opinions are consistency and supportability," which are the "same

factors" that "form the foundation of the current treating source rule." The ALJ should also

consider the length of the treatment relationship, frequency of examinations, purpose of the

treatment relationship, extent of the treatment relationship, examining relationship, and

specialization. 20 C.F.R. § 404.1520c(c). Plaintiff correctly argues that ALJ must explain how

persuasive he finds the medical opinions in the record, specifically setting forth how he considered

---

[2] Indeed, the Commissioner spends over eight pages of his response brief schooling the
Court on the new regulations. However, no amount of regulatory revision absolves ALJs from
their duty to carefully consider all of the medical opinions and to explain (with a discussion of the
relevant evidence) their decision to accept or reject the opinions.

the supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

The ALJ found Dr. Reddy's opinion not persuasive because: (1) Dr. Reddy "did not support her opinion with the objective medical evidence she relied on in making it;" and (2) the opinion was "inconsistent with the medical evidence of record" and "too restrictive." (AR 35.) Plaintiff argues that these reasons fail to support the ALJ's finding the opinion was not persuasive.

With respect to the first reason, Plaintiff points out that this is a factual error as Dr. Reddy set forth supporting evidence, including swelling in Plaintiff's hands, wrist, and left foot; abnormal lab work; x-rays; at least 11 of 18 specific tender points; cognitive dysfunction; irritable bowel syndrome; muscle pain; muscle weakness; frequent severe headache; dizziness; shortness of breath; frequent urination; insomnia; fatigue; depression; anxiety disorder; waking unrefreshed; numbness or tingling; abdominal pain/cramps; constipation; nausea; nervousness; itching; sun sensitivity; and panic attacks. (AR 1530, 1534-35.)

In response, the Commissioner relies on the ALJ's statement that Dr. Reddy's opinion was not persuasive because Dr. Reddy did not set forth the evidence that supported her opinion. (citing AR 35). However, the Commissioner does not acknowledge that this was factual error as Dr. Reddy set forth supporting evidence as detailed above. The new regulations mandate the ALJ set forth an assessment of supportability of opinion evidence as it is one of the two most important factors in evaluating opinion evidence. 20 C.F.R. § 404.1520c (b)(2). This Court agrees with Plaintiff that the decision cannot stand given that the ALJ factually erred in his evaluation of supportability, and the Commissioner has waived any response. *See Michael L. v. Saul*, 2:20CV 238, 2021 WL 1811736, *10 (N.D. Ind. May 6, 2021) (ALJ reversibly erred in evaluating opinion evidence under new regulations when the physician had indicated what evidence supported his

13

opinion but "[t]he ALJ did not explain why that was not 'enough' objective evidence.").

With respect to the second reason, as Plaintiff notes, the ALJ did not explain why he concluded the opinion was inconsistent or too restrictive. This error is heightened given that the new regulation required the ALJ to explain how consistency was considered. 20 C.F.R. § 404.1520c (b)(2). Additionally, the ALJ failed to acknowledge the consistency between the opinions of these two treating specialists including that they both opined Plaintiff could not perform full time work, would need unscheduled breaks, and would be both off task and absent at a rate which the vocational expert testified would be work preclusive. (AR 1542-47, 1530-37, 78, 80.) *See Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016) ( The ALJ "must confront the evidence that does not support [his] conclusion and explain why that evidence was rejected.").

The Commissioner points to some normal findings. However, the ALJ set forth no explanation why this particular evidence undermined Dr. Reddy's opinion. (AR 35.) As this Court has set forth, the ALJ decision cannot stand under the new regulations when the ALJ finds the opinion not persuasive because it is inconsistent with medical evidence but does not explain why that evidence is inconsistent with the opinion. *See e.g., Michael L. v. Saul*, 2:20CV238, 2021 WL 1811736, *11 (N.D. Ind. May 6, 2021). Further, a review of the reports cited by the Commissioner does not establish all normal examination findings but, rather, also documents decreased sensation in Plaintiff's hands and feet (AR 1069), swelling in both hands (AR 1184, 1194, 1625), decreased cervical spine range of motion with tenderness (AR 1184, 1194, 1625), joint tenderness (AR 1184, 1194 ), toe swelling (AR 1184, 1625), abnormal spinal motion (AR 1578), and a constricted affect and depressed mood. (AR 1614-15).The Commissioner also declined to discuss the ALJ's failure to acknowledge the consistency between the opinions of the

two treating specialists including that they both opined Plaintiff could not perform full time work, would need unscheduled breaks, and would be both off task and absent at a rate which the vocational expert testified would be work preclusive. (AR 1542-47, 1530-37, 78, 80).Clearly, the ALJ's errors in assessing the opinion evidence from treating specialist rheumatologist Dr. Reddy requires remand.

Further, in finding Dr. Kassar's opinion not persuasive, the ALJ employed the same boilerplate as he did when dismissing Dr. Reddy's opinion. The ALJ again cursorily observed that the opinion was inconsistent with the medical evidence of record and too restrictive. (AR 34-35.) As with discounting Dr. Reddy's opinion, this perfunctory generic statement fails to explain how consistency was considered as required by the new regulations particularly given its consistency with the treating opinion of Dr. Reddy. 20 C.F.R. § 404.1520c(b)(2).

The ALJ also stated that the opinion from Dr. Kassar, a neurologist, was unsupported given that treatment notes generally showed normal findings including normal neurological findings. (AR 35.) Plaintiff points out that this is inaccurate as Dr. Kassar repeatedly and consistently found abnormal neurological findings of sensory and reflex abnormalities. (AR 1046, 1050, 1058, 1074, 1080, 1099.) *See Gerstner v. Berryhill*, 879 F.3d 257, 261-62 (7th Cir. 2018) (remanding where the ALJ fixated on select "normal" examinations in the record and selectively discussed the evidence). Thus, as with Dr. Reddy, the ALJ failed to set forth a supported explanation as required by the new regulations for how he assessed the supportability and consistency.

Moreover, there is no indication that the ALJ considered the other regulatory factors, including length of the treatment relationship, frequency of examinations, purpose of the treatment

relationship, extent of the treatment relationship, examining relationship, and specialization. 20

C.F.R. § 404.1520c(c). For example, the ALJ did not indicate why the treatment relationship and

specialization considerations with the opinions from Drs. Reddy and Kassar did not render the

opinions more persuasive than the opinions from the Agency reviewing doctors who were not

treating specialists. (AR 34-35.) In sum, the ALJ's errors in evaluating the opinion evidence from

these two treating specialists warrants remand.

Next, Plaintiff argues that the ALJ failed to properly support the RFC. As discussed

above, the ALJ did not find the opinion evidence from the treating specialists persuasive. (AR

34-35.) The ALJ also did not adopt the opinions from the Agency reviewing physicians who

opined to a range of light work. (AR 34.) Although the ALJ is not required to adopt a specific

physician opinion, by not adopting any medical opinion, the ALJ faced an evidentiary deficit. *Suide*

*v. Astrue*, 371 Fed. Appx. 684, 689-90 (7th Cir. 2010) (lack of reliance on any physician opinion

evidence created an evidentiary deficit); *Pereida v. Commissioner of Social Security*,

2:20-CV-00107-RLM-SLC, 2021 WL 327517, *4 (N.D. Ind. Jan. 14, 2021) ("The ALJ did not

provide evidence to explain how he came to the RFC limitations, and the creation of such middle

ground without medical evidence to support his decision requires remand").

Plaintiff argues that the ALJ erred when he did not obtain or rely on evidence to fill this

deficit. For example, the ALJ could have requested medical interrogatories or asked the Agency

physician to review the updated record. The ALJ instead erred by forging ahead with his own

independent assessment to fill the evidentiary gap. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir.

2014) (independent medical assessments improper). Plaintiff points out that, in making his own

independent assessment, the ALJ appeared to merely strike a middle ground between the Agency

16

physicians' opinions that Plaintiff could perform a range of light work and the opinion evidence from Plaintiff's treating specialists that she was unable to perform sedentary work on a full-time basis. (AR 90-92, 107-10, 1530-37, 1542-47.) Such a middle ground approach cannot stand. *See Smith v. Colvin*, 208 F.Supp.3d 931, 942 (N.D. Ind. 2016) (error for ALJ to determine work capacity by averaging opinions).

Plaintiff contends that the ALJ's error is underscored by his finding that Plaintiff could frequently handle and finger despite finding rheumatoid arthritis a severe impairment. (AR 32, 28.) The ALJ considered that the opinion of non-examining Agency physician, Dr. Ruiz, that Plaintiff could perform a range of light work was "generally consistent with the medical evidence," but that Plaintiff's condition warranted manipulative limitations as well as accommodation for cane use. (AR 34.) The ALJ ignored that Dr. Ruiz limited Plaintiff to frequent handling and fingering due to her rheumatoid arthritis (AR 108).  Dr. Ruiz observed that the July 2018 rheumatoid treatment note documented some swelling of the hands and wrists as well as decreased grip strength. (AR 109.) However, Dr. Ruiz also had concluded that this rheumatoid arthritis treatment note was "not detailed enough." (AR 104.) Accordingly, an Agency consultative examination was sought which showed Plaintiff could perform fine manipulation but had deceased grip strength of 4/5 and decreased hand power. (AR 1527.) Specifically, hand power, as measured by the dynamometer, established Plaintiff was able to generate 17 kilograms of force (average 29 kilograms) with her right hand, and was able to generate 11 kilograms of force (average 28 kilograms) with her left hand (AR 1527.) However, neither the ALJ nor Dr. Ruiz evaluated this loss of more than forty-one percent of hand strength on the right and loss of more than sixty percent with the left hand. The ALJ did not explain why he found that Plaintiff could intensely use her hands for more

than five hours daily given this significant evidence of weakness.

As another example, the ALJ did not explain why Plaintiff did not require additional breaks especially given her excessive fatigue/tiredness that was documented in the record. (*see* AR 65, 69, 232, 242, 248, 354, 664, 673, 681, 765, 803, 822, 1098, 1103, 1113, 1183, 1193, 1461, 1585, 1621.) *Se*e Social Security Ruling 16-3p, 2016 WL 1119029, *8 (S.S.A.) ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions."). Plaintiff further argues that the ALJ's failure to analyze the functional impact of Plaintiff's fatigue is heightened given that the ALJ found Plaintiff's fibromyalgia was a severe impairment and the Agency's Ruling acknowledges fatigue as a symptom of fibromyalgia. (AR 28.) *See* Social Security Ruling 12-2p.

Plaintiff points out that the ALJ also failed to set forth a supported assessment of Plaintiff's migraine headaches. The ALJ dismissed them as a non-severe impairment and did not set forth any assessment of associated work limitations. (AR 28.) In dismissing them as not severe, the ALJ categorized Plaintiff's headaches with conditions like her irritable bowel syndrome, concluding "that these conditions have either been successfully treated, controlled, stabilized, or otherwise do not more than minimally affect the claimant's ability to perform basic work activities." (AR 28.) Since beginning Botox injections for her migraines, Plaintiff testified that the frequency of her headaches had improved to about one a week, but her headaches remained intense, sometimes lasting the entire day or longer. (AR 68-69.) When she had a migraine, she needed a dark and quiet environment. (AR 69.) Thus, although the frequency of her migraine headaches improved with treatment, they remained an ongoing difficulty. Even at one a week, this would exceed the

allowable absences which the vocational expert testified was near zero tolerance for the first ninety days and then no more than two monthly. (AR 78, 80.) Plaintiff concludes that the ALJ erred when he did not evaluate the work limitations associated with Plaintiff's migraines. *See Shauger v. Astrue*, 675 F.3d 690, 697-98 (7th Cir. 2012) (failure to evaluate impact of headaches, including timing of headaches, duration, and measures used to treat the headaches).

In response, the Commissioner acknowledges that for the RFC assessment to be upheld, the ALJ must identify supporting evidence in the record and build a logical bridge from the evidence to that conclusion. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). The Commissioner, however, failed to set forth any reasonable rationale supporting the ALJ's finding with a bridge from the evidence to the RFC. The Commissioner offers no supported argument that the ALJ's residual functional capacity finding was not a compromised middle ground between the Agency physicians' opinions that Plaintiff could perform a range of light work and the opinion evidence from Plaintiff's treating specialists that she was unable to perform sedentary work on a full-time basis.

Moreover, the Commissioner offers no rationale for the ALJ finding that Plaintiff could frequently handle and finger despite finding rheumatoid arthritis a severe impairment, thereby waiving the issue. The Commissioner also sets forth no bridge by the ALJ from the evidence, especially of loss of more than forty-one percent of hand strength on the right and loss of more than sixty percent with the left hand, to the finding that Plaintiff could handle and finger more than five hours during the workday. (AR.1537.) Given this objective testing, the Commissioner's general averment that no objective evidence indicated greater limitations is misplaced. This Court agrees with Plaintiff that the ALJ's decision cannot stand given the lack of

any supported rationale that Plaintiff can use her hands on a frequent basis. This error is critical

given that the ALJ limited Plaintiff to sedentary unskilled jobs (AR 36): "Most unskilled sedentary

jobs require good use of both hands and the fingers." Social Security Ruling 96-9p.

Likewise, the Commissioner wholly ignored the ALJ's failure to assess Plaintiff's

fatigue and tiredness and whether that required additional breaks, waiving this issue as well.

The ALJ's failure to analyze the functional impact of Plaintiff's fatigue is heightened given that the

ALJ found fibromyalgia was a severe impairment and the Agency's Ruling acknowledges fatigue

as a symptom of fibromyalgia. (AR 28). *See* Social Security Ruling 12-2p. This error is critical

because the vocational expert testified that the jobs would not allow someone more than ten to

fifteen percent of off task time. (AR 78.) Additionally, during the first ninety days of work, there

would be "almost zero tolerance for any deviation from focus, attention, or absenteeism." (AR

80.)

As discussed above, Plaintiff has argued that the ALJ further erred in assessing the RFC

by not setting forth a supported assessment of Plaintiff's migraine headaches. The Commissioner

declined to address this point, waiving the issue.

For the above reasons, remand is required on the issues raised by Plaintiff regarding the

RFC assessment.

Next, Plaintiff argues that the ALJ failed to properly assess Plaintiff's symptoms. In

assessing Plaintiff's symptoms, the ALJ found: "As for the claimant's statements about the

intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are

not fully supported by the medical evidence of record." (AR 34.) Plaintiff argues that this finding

by the ALJ demonstrates two-fold legal error. First, it indicates that the ALJ used the incorrect

legal standard in evaluating symptoms. The standard is not whether the evidence is "fully" or entirely consistent; the standard is the preponderance of the evidence which is a lesser standard. 20 C.F.R. § 404.953(a). Second, if the medical evidence does not support a wholly favorable decision, the ALJ then must consider the non-medical evidence in assessing symptoms. *See* Social Security Ruling 16-3p ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."). Plaintiff correctly argues that the ALJ cannot dismiss symptoms based only his perception of the objective medical evidence. *See Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015); Social Security Ruling 16-3p.

Given that the ALJ found the objective evidence alone did not establish disability although Plaintiff had severe impairments which could cause the symptoms (AR 33), the ALJ was required to consider the numerous factors under Social Security Ruling 16-3p, including her daily activities, her course of treatment, and her precipitating and aggravating factors. 20 C.F.R. § 404.1529; Social Security Ruling 16-3p. *See also Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001). The ALJ failed to make this required regulatory evaluation. For example, the ALJ failed to evaluate that the limited nature of Plaintiff's activities was consistent with her allegations of limitations. (AR 224, 216.) The decision cannot be upheld when the ALJ failed to give specific reasons for discounting Plaintiff's symptoms under the regulatory factors. *E.g., Steele v. Barnhart*, 290 F.3d 936, 941-42 (7th Cir. 2002).Social Security Ruling 16-3p, 2017 WL 5180304, *10 (S.S.A.)

In response, the Commissioner offers no argument that the ALJ conducted this required

regulatory evaluation. The Commissioner offers no reasoning that the decision should be upheld
when the ALJ failed to give specific reasons for discounting Plaintiff's symptoms under the
regulatory factors. Therefore, remand is warranted.

Next, Plaintiff argues that the ALJ erred in assessing the treating psychiatrist opinion
evidence.  As discussed above, the ALJ was charged with assessing the opinion evidence under the
new regulations. In finding Plaintiff's mental impairments were not severe and did not impose any
significant limitation, the ALJ found the opinion of treating psychiatrist Dr. Ang not persuasive.
(AR 30.) In dismissing the opinion, the ALJ acknowledged abnormal findings which included a
consistently depressed and anxious mood with constricted affect, but noted that other findings,
such as speech and language, were normal. (AR 30.) The ALJ, however, did not explain why he
focused on select findings as a litmus test for mental limitations. The ALJ also failed to
acknowledge other findings in Dr. Ang's office reports that supported the opinion, including
racing thoughts, crying spells, low energy, and not caring whether she lived or died. (AR 1446.)
Likewise, the ALJ did not acknowledge the supportive evidence that Dr. Ang set forth with the
opinion including panic attacks, shortness of breath, social isolation, sadness, loss of interest,
"brain fog," sleep problems, appetite changes, decreased energy, past thoughts of suicide, an
abnormal affect, feelings of guilt/worthlessness, mood disturbance, difficulty thinking or
concentrating, emotional withdrawal/isolation, easy distractibility, anxiety, short term memory
impairment, and sleep disturbance. (AR 1549-50.)

Plaintiff further contends that, in addition to failing to properly assess supportability as
required under the regulations, the ALJ also failed to properly consider consistency. The ALJ
failed to consider that Dr. Ang's opinion of deficits was consistent in part with the Agency's own

22

examiner, Dr. Pithadia, who found some impairment in short term memory. (AR 1528.) It also was consistent with counseling notes documenting hopelessness, sadness, depression, anxiety, panic attacks, problems interacting with others, memory difficulties, and "fuzzy" thinking. (AR 1345-63, 1598-1610.) Likewise, it was consistent with Plaintiff's previous firing from a job for failing to interact appropriately with her supervisor and coworkers. (AR 220, 228.) It also was consistent with Dr. Reddy's notation of Plaintiff's tearfulness. (AR 1181, 1191.)

In response, the Commissioner relies on the select citation of evidence but declines to provide a reasonable basis for such selective reliance. *Kaminiski v. Berryhill*, 894 F.3d 870, 874-75 (7th Cir. 2018) (impermissible cherry picking in discounting opinion evidence). Accordingly, for the above reasons, remand is also warranted on the ALJ's assessment of Dr. Ang's opinion.

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: June 16, 2021.

s/ William C.  Lee
William C. Lee, Judge
United States District Court

23